Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, August 28, 2008 9:42:20 AM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ESKIM, LLC., | ) Case No. 08-509 |
| | ) |
| Debtor. | ) Chapter 11 |

**MEMORANDUM OPINION**

On September 22, 2005, Sun Life Assurance Company of Canada ("Sun Life") loaned $5,495,000 to Eskim, LLC (the "Debtor"), and secured the amount of the loan by taking a deed of trust on 47 residential rental properties. Sun Life seeks relief from the automatic stay to begin liquidating those properties, and seeks to prohibit the Debtor from using its cash collateral.

The Debtor objects to both motions on the grounds that Sun Life is over secured by the value of the properties, and that Sun Life will be adequately protected by the organized sale of individual properties in its Chapter 11 case. The Debtor and Sun Life agree that the going concern value of the 47 individual properties is $6,309,500. The Debtor, however, contests Sun Life's assertion that the amount of its secured claim is $5,817,910 on the grounds that it includes a $623,000 acceleration fee. The Debtor argues that it should be allowed to propose a Chapter 11 plan to cure its pre-petition default on the note under 11 U.S.C. § 1123(a)(5)(G), and, thereby, eliminate the acceleration fee. Thus, the Debtor asserts that Sun Life's secured claim is no more than $5,194,910. Assuming a 10% cost of sale ($630,950 – a number that the Debtor believes is high), the Debtor estimates that it has about $483,640 in equity that it can preserve under a confirmed plan.

For the reasons stated herein, the court will deny Sun Life's motion for relief from the automatic stay, deny its motion to prohibit the Debtor from using its cash collateral, and will enter an order setting a deadline for the Debtor to submit its proposed plan of reorganization.

1

## I. BACKGROUND

The Debtor is in the business of purchasing residential housing and then renting out those housing units through a third-party property manager. Of the 47 properties at issue in this case, 21 are single family units, 21 are multi-family dwellings of two to four rental units, and the remaining 5 properties each have six to ten rental units. The 47 individual properties have a going concern value of $6,309,500, and, according to Sun Life, a "quick sale" value of $5,047,400.

On September 22, 2005, the Debtor borrowed $5,495,000 from Sun Life to finance its rental property business. The Debtor and Sun Life agree that its deed of trust secures all 47 properties at issue in this case. The non-default monthly payments on the note secured by the deed of trust is $35,002.38.

In the summer of 2007, the Debtor began to have trouble making its monthly loan payments to Sun Life. The Debtor attempted to contact Sun Life through its local agent to negotiate a loan workout and to sell individual properties to both reduce the principal balance owed and the monthly note payment. According to the Debtor, however, its efforts were frustrated because it had to speak to Sun Life through its local agent. Among other things, the Debtor complained that it could not obtain reasonable secured debt payoffs with regard to the sale of individual properties. As a consequence, the Debtor ceased making payments on the 2005 note.

On March 10, 2008, Sun Life sent the Debtor an acceleration notice stating that the Debtor was in default of the 2005 loan, and, in addition to principal and interest, the Debtor owed an acceleration fee of $827,870.93.[1] On April 9, 2008, the Debtor filed its Chapter 11 bankruptcy petition.

The Debtor's operating reports from April, May, and June 2008 demonstrate an inability of the Debtor to meet the monthly, non-default, note payments of $35,002.38 due Sun Life. For example, in April 2008, the Debtor's income was $40,205, and its total expenses were $27,847, leaving only $12,357 to make the note payment. Likewise, in May 2008, net operating income was $12,852, and in June it was $12,587. It is only through the sale of properties and a reduction in the

---

[1] Sun Life's Exhibit 10, submitted at the July 30, 2008 hearing in this case, lists the acceleration fee as $632,009.95. The court is unsure as to why there is such a discrepancy in the acceleration fee between March 10, 2008 and July 30, 2008.

2

principal amount of the note that the Debtor will be able to meet its obligations to Sun Life.

## II. DISCUSSION

In asking the court to lift the automatic stay, Sun Life argues that the Debtor has failed to make full monthly payments on the 2005 note since September 2007, and with the acceleration fee included, no equity exists in the properties after considering the costs of sale.  Likewise, it seeks to prohibit the Debtor from using the collected rents – its cash collateral – on the basis that it is not being adequately protected against the Debtor's diminishment of the rents.

The Debtor contends that Sun Life is adequately protected based on the business plan it outlined in court, which, in the Debtor's view, will result in substantial equity being realized from the sale of its properties.

Sun Life moves for relief from the automatic stay under both 11 U.S.C. § 362(d)(1) and (d)(2), both of which are independent grounds for obtaining relief:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if--
> > > (A) the debtor does not have an equity in such property; and
> > > (B) such property is not necessary to an effective reorganization

§ 362(d)(1-2).

When seeking relief under § 362(d)(1), the lack of adequate protection is listed as a type of "cause" that is sufficient to lift the automatic stay.[2]  What constitutes "adequate protection" is listed in § 361 of the Bankruptcy Code, and although not specifically mentioned, the existence of an equity

---

[2] Other types of "cause" sufficient to lift the automatic stay under 11 U.S.C. § 362(d)(1) include: filing a case in bad faith, permitting litigation to be concluded in another forum, pursuing embezzled property in the debtor's hands, and litigating actions that are only remotely related to the bankruptcy case, or which involve the rights or third parties.  3 *Collier on Bankruptcy* ¶ 362.07[3][a] (Alan N. Resnick & Henry J Sommer, eds., 15th ed. rev. 2008). Because Sun Life has not articulated "cause" under § 362(d)(1) beyond the alleged lack of adequate protection and inability of the Debtor to meet its monthly loan obligations, the court will not consider whether other "cause" exists in the case to lift the automatic stay.

cushion is held to be a form of adequate protection sufficient to forestall a motion for relief from the automatic stay. *E.g.*, *Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264, 1272 (5th Cir. 1997) (recognizing an equity cushion as a form of adequate protection); *In re Mellor*, 734 F.2d 1396, 1400 (3d Cir. 1984) ("Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court.").[3] Consequently, in both § 362(d)(1) and § 362(d)(2), the amount of equity in the property above the amount of the secured lien plays an important role in determining whether to grant stay relief. The major difference between the two sections with regard to the equity determination is that the "equity cushion" for purposes of § 362(d)(1) is concerned only with the lien of the moving creditor, and any senior liens, as compared to the value of the property. Under § 362(d)(2)(A), "equity" is determined with regard to the amount of all secured claims against the property – including liens that are junior to the moving creditor. *Nantucket Investors II v. California Federal Bank (In re Indian Palms Associates, Ltd.)*, 61 F.3d 197, 207-08 (3d Cir. 1995). Likewise, when requested by a secured creditor, 11 U.S.C. § 363(e) prohibits a debtor from using that creditor's cash collateral unless the creditor is adequately protected.

With regard to the requirement in 11 U.S.C. § 362(d)(2)(B) that the property not be necessary for an effective reorganization, the Debtor has the burden of proof "to establish that the collateral at issue is 'necessary to an effective reorganization.'" *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988); *see also* 11 U.S.C. § 362(g)(2) (stating that the party requesting relief from the automatic stay has the burden to show the lack of equity and the debtor has the burden with regard to all other issues). An "effective reorganization" contemplates a plan that is feasible, meaning that there exists a "probability of actual performance of provisions

---

[3] The Court of Appeals for the Fourth Circuit has refrained from determining if "an equity cushion alone would constitute sufficient protection." *In re Snowshoe Co.*, 789 F.2d 1085, 1090 (4th Cir. 1986). Courts within the Fourth Circuit, however, have held that an equity cushion is sufficient adequate protection to forestall stay relief. *E.g.*, *In re Snead*, No. 08-00070, 2008 Bankr. LEXIS 1160 at *3 (Bankr. E.D.N.C. April 1, 2008) ("[A] 27% equity cushion exists in the property, and the court finds that this provides sufficient protection of Bayview's interest without the necessity of adequate protection payments. Bayview's motion for relief from the automatic stay and to enjoin the debtor from using cash collateral is DENIED.").

of the plan. . . . The test is whether things which are to be done after confirmation can be done as a practical matter under the facts." *Clarkson v. Cooke Sales and Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985); *see also In re Bergman*, 585 F.2d 1171, 1179 (2d Cir. 1978) ("Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises."); *In re Grandfather Mt. Ltd. P'ship.*, 207 B.R. 475, 485 (Bankr. M.D.N.C. 1996) ("The test of whether the Debtor can accomplish what the plan proposes is a practical one and, although more is required than mere hopes and desires, success need not be certain or guaranteed."); *In re Cheatham*, 91 B.R. 377, 380 (Bankr. E.D.N.C. 1988) ("[I]n estimating future performance "'mathematical certitude' is neither expected nor required. While findings as to the earning capacity of an enterprise are essential to a determination of feasibility, a prediction as to what will occur in the future, an estimate, as distinguished from mathematical certitude, is all that can be made.").

Here, the Debtor has not yet proposed a plan of reorganization. Rather, the Debtor states that it will file a plan (depending on the outcome of Sun Life's motion for relief) that calls for the sale of property sufficient to payoff Sun Life's secured claim, and that cures the default giving rise to the pre-petition acceleration fee of $623,000.

Curing a pre-petition default in a Chapter 11 plan is expressly allowed by 11 U.S.C. § 1123(a)(5)(G), which states that "a plan shall . . . . (5) provide adequate means for the plan's implementation, such as . . . (G) curing or waiving any default . . . ." The amount necessary to cure the default is governed by § 1123(d), which requires the cure to "be determined in accordance with the underlying loan agreement and applicable non-bankruptcy law." Once the "cure" is established, then § 1124(2) deems the creditor unimpaired for purposes of voting on the Chapter 11 plan. § 1124(2)(A) ("[A] class of claims or interests is impaired under a plan unless . . . the plan . . . (2) . . . (A) cures any such default that occurred before or after the commencement of the case . . . ."). Other than stating that the "cure" amount is to be determined in accordance with the underlying loan agreement and applicable non-bankruptcy law, the Bankruptcy Code does not define the term "cure." The Court or Appeals for the Fourth Circuit, however, has provided the following guidance:

> [A] "cure" merely reinstates a debt to its pre-default position, or it returns the debtor and creditor to their respective conditions before default. *In Landmark Financial Services v. Hall*, 918 F.2d 1150 (4th Cir. 1990), we had occasion to assess the meaning of the term "cure," as it is used in § 1322(b)(5). In that decision, Judge Hall determined that "a cure reinstates the original pre-bankruptcy agreement of the

5

> parties. . . [and] is not a modification of the [creditor's] rights. Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts." *Id.* at 1154.

*Litton v. Wachovia Bank (In re Litton)*, 330 F.3d 636, 644 (4th Cir. 2003). *See also In re Taddeo*, 685 F.2d 24, 26-27 (2d Cir. 1982) ("A default is an event in the debtor-creditor relationship which triggers certain consequences – here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified.").

Here, the acceleration fee charged to the Debtor by Sun Life represents damages due Sun Life under the note for its loss of investment. If the Debtor cures the default, then Sun Life will no longer have damages due it under the acceleration clause of the note, and consistent with 11 U.S.C. § 1123, the Debtor may then seek to modify the rights of Sun Life to allow for the orderly sale of its properties to pay its secured claim. *E.g.*, *In re Thompson*, 894 F.2d 1227, 1228 (10th Cir. 1990) ("[A]ll circuits that have addressed the issue have agreed that contractual acceleration of mortgage debt upon default does not end the debtor's right to cure the mortgage default in bankruptcy by paying the amount of the original default, rather than the entire accelerated debt.").

Consequently, given the Debtor's ability to cure defaults and eliminate the invocation of the acceleration clause of the 2005 note, it appears as if the Debtor's anticipated plan for the orderly sale of its residential rental properties to payoff Sun Life will be more than visionary, such an anticipated plan will be both practical, feasible, and necessary to preserve the Debtor's equity in the rental properties.

Of course, the Debtor does not have a filed plan of reorganization. With only an orally proposed outline for future action, the court is reluctant to find that the existence of an equity cushion alone in this case is sufficient to adequately protect Sun Life from both the stay against its lien enforcement, and the use of its cash collateral by the Debtor. Indeed, the court's accepted valuation of the property depends on its being sold at a going concern value – not one of foreclosure. Moreover, it would be wasteful to allow the existing equity cushion to dissipate in the hopes that the Debtor may act on its anticipated plan at some point in the future. The Debtor must formulate its anticipated future course of action within a proposed Chapter 11 disclosure statement and plan, which would include, *inter alia*, a schedule for the orderly liquidation of the rental properties, a

schedule for determining what percentage of each sale would be paid to Sun Life in payment of its secured debt, and budgetary projections for the Debtor's financial affairs both before and after the anticipated sales.

### III. CONCLUSION

The court will deny Sun Life's motions for relief from the automatic stay and to prohibit the Debtor from the use of its cash collateral on the basis that Sun Life is adequately protected by an equity cushion in the rental properties. The court will order the Debtor to file a joint Chapter 11 disclosure statement and plan within 30 days of the entry of the court's order. If no timely disclosure statement or plan is filed, this case will be dismissed under 11 U.S.C. §§ 1112(b)(4)(A), (D), (E), and/or (J). A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.